IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| RONNIE L. HARDMAN, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | No. 15-CV-798-W-DGK-P |
| | ) | (Crim. No. 11-CR-53-W-DGK) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER GRANTING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

When sentencing Movant Ronnie L. Hardman ("Hardman") for being a felon in possession of a firearm, the Court found that he had a past Missouri state conviction for burglary. As required by the Armed Career Criminal Act ("ACCA"), the Court gave him a higher sentence than he otherwise would have received.

Hardman has now filed a motion to vacate his sentence under 28 U.S.C. § 2255 (Doc. 1) against Respondent ("the Government"). He argues that in light of a recent Supreme Court case, his burglary conviction no longer subjects him to ACCA enhancement, so the Court should vacate his sentence.

The Court holds that Hardman's burglary conviction is not a "burglary" conviction as used in the ACCA. Although this result may seem counterintuitive, for the reasons explained below, the motion is GRANTED and Hardman's sentence is VACATED.

**Background**

In his federal criminal case, Hardman pled guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g), 924(a)(2). While that crime usually carries a maximum prison sentence of ten years, a defendant faces an enhanced sentence—fifteen

years to life imprisonment—if he has three previous convictions that qualify under the ACCA. *Id.* § 924(e)(1).

Prior to Hardman's sentencing, the U.S. Probation and Pretrial Services Office generated a presentence investigation report ("PSR"). The report writer concluded that Hardman had at least three prior felony convictions. Two were for sale of a controlled substance, each in February 2000. The third was a 2008 conviction for burglary in the second degree, as charged in an information filed in the Circuit Court of Jackson County, Missouri. That information, to which he pled guilty, alleged that

> the defendant, Ronnie L. Hardman[], in violation of Section 569.170, RSMo, committed the Class C Felony of Burglary in the Second Degree, punishable upon conviction under Sections 558.011 and 560.011, RSMo, in that on or about the 5th day of October, 2007, in the County of Jackson, State of Missouri, the defendant acting alone or purposefully in concert with another, knowingly entered unlawfully in an inhabitable structure, located at 2615 Jackson Avenue, and owned by Daniel Salinas for the purpose of committing Stealing therein.

(Crim. Doc. 33-1 at 1) (boldface removed).

The PSR elaborated on the 2008 burglary conviction, "According to the probable cause statement, on October 6, 2007, an individual contacted the police department as his home had been burglarized. The victim reported that a window in his laundry room was pushed in and was leaning up against the wall. . . . [Hardman] was interviewed by the police [and] eventually admitted to assisting an individual he identified as 'BG,' by pushing in the window." (Crim. Doc. 20 at 10). The referenced probable cause statement does not appear outside the PSR. Hardman did not object to the PSR's recitation of the probable cause statement.

At the sentencing hearing in 2012, the Court found that these three convictions fell under the ACCA, though it did not identify which specific provisions of the ACCA applied. Finding Hardman to be an armed career criminal, the Court sentenced him to the mandatory minimum

sentence of 180 months' imprisonment. Hardman appealed his sentence on issues unrelated to the instant motion, unsuccessfully. *United States v. Hardman*, 489 F. App'x 139 (8th Cir. 2012).

**Discussion**

Hardman concedes that his two controlled-substance convictions qualify under the ACCA, but argues that his 2008 second-degree burglary conviction no longer does because the applicable part of the ACCA was invalidated after his sentencing. Without a third ACCA conviction, he argues, he was improperly sentenced and must be resentenced. *See* 28 U.S.C. § 2255(a), (b). The Government responds that despite recent changes in the law, Hardman still warrants the armed career criminal enhancement because his burglary conviction is captured by a different part of the ACCA.

A district court may vacate, set aside, or correct a federal sentence if "the sentence was in excess of the maximum authorized by law." *Id.* § 2255(a). In an ACCA case like this, the movant carries the burden of showing that the Government did not prove by a preponderance of the evidence that his conviction fell under the ACCA. *See Day v. United States*, 428 F.2d 1193, 1195 (8th Cir. 1970) ("The petitioner bears the burden of proof upon each ground presented for relief in a Section 2255 proceeding."); *United States v. Thornton*, 766 F.3d 875, 878 (8th Cir. 2014) (requiring the Government to prove at sentencing, by a preponderance of the evidence, that the defendant pled guilty to a qualifying ACCA offense).

**I. The Court must employ the modified categorical approach to determine whether Hardman was convicted of an ACCA "violent felony."**

The ACCA enhances the statutory range of punishment for recidivating defendants that have collected three prior convictions for certain drug crimes or "violent felon[ies]." 18 U.S.C. § 924(e)(1). One type of "violent felony" was defined in the "residual clause," under which Hardman's conviction likely fell, giving the Court no need to explicitly state which type of

3

"violent felony" applied here. *See United States v. Cantrell*, 530 F.3d 684, 695–96 (8th Cir. 2008) (holding that Missouri's second-degree burglary offense was categorically a "crime of violence" under the residual clause despite its broad definition of "inhabitable structure"). However, last Term the Supreme Court of the United States invalidated the residual clause as unconstitutional. *Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015). Because the Government concedes here that *Johnson* applies retroactively to Hardman's case,[1] the issue is whether his burglary conviction could be classified as any other type of violent felony.

The only other plausible violent felony is "burglary," which the ACCA casts as a predicate in the so-called enumerated offenses clause. 18 U.S.C. § 924(e)(2)(B)(ii). To determine whether Hardman's conviction constitutes ACCA "burglary," a court employs a "categorical approach" and "compare[s] the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime—*i.e.*, the offense as commonly understood." *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013). "The prior conviction qualifies as an ACCA predicate only if the [convicting] statute's elements are the same as, or narrower than, those of the generic offense." *Id.* The key "is elements, not facts." *Id.* at 2284.

Thus, the Court must compare the elements of the "generic" crime of burglary with the elements of Hardman's statute of conviction. The "generic" crime of burglary has the following elements: "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Id.* at 2283 (quoting *Taylor v. United States*, 495 U.S. 575, 599 (1990)). Courts struggle with the precise meaning of "building or structure," but generally agree that the phrase includes at least "those spaces that are designed for occupancy and intended for use in one place," and excludes at least modes of transportation. *See United States v. Silva*, 608

---

[1] The recentness of the *Johnson* case, and the Government's concession of its retroactivity, are what makes this motion timely. *See* 28 U.S.C. § 2255(f)(3).

F.3d 663, 668–69 (10th Cir. 2010) (holding that "building or structure" also includes "other, potentially less complete 'enclosed spaces'"); *United States v. Grisel*, 488 F.3d 844, 848–49 (9th Cir. 2007) (en banc) (holding that "building or structure" means *only* permanent and unmovable structures).

Under Missouri's second-degree burglary statute—Hardman's statute of conviction—a person is guilty if he "knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein." Mo. Rev. Stat. § 569.170.1 (2007). "Inhabitable structure," in turn, "includes a ship, trailer, sleeping car, airplane, or other vehicle or structure" where people live, conduct business, assemble, or spend the night. *Id.* § 569.010(2).

Under the categorical approach, Hardman's conviction cannot be a predicate offense. Missouri's second-degree burglary statute criminalizes the unlawful entry into an "inhabitable structure" like a ship, which does not qualify as generic burglary. *See Descamps*, 133 S. Ct. at 2283; *Grisel*, 488 F.3d at 848–49. Given the breadth of the statute's reach, the Court cannot conclude at this point that Hardman was convicted of "burglary" within the meaning of the enumerated offenses clause. *See Descamps*, 133 S. Ct. at 2281.[2]

But the inquiry does not end here, because the Court can modify the categorical approach if the statute is textually "divisible," meaning it can be violated in alternative ways, one of which matches the generic offense. *Id.* Section 569.170.1 presents alternative sets of elements, one of which does not conform to generic burglary—the unlawful entry into an "inhabitable structure"

---

[2] The Government argues that *United States v. Sykes*, 809 F.3d 435 (8th Cir. 2016), held that Missouri second-degree burglary is categorically a violent felony. *Sykes* pronounced no such rule; it found that the defendant's conviction for second-degree burglary fell within the ACCA based on certain factual waivers that he had effected. *Id.* at 438; *see also United States v. Bell*, 445 F.3d 1086, 1090–91 (8th Cir. 2006).

5

like an airplane—but one of which does—the unlawful entry into a building. Therefore, the statute is divisible and the Court may employ the modified categorical approach. *See id.*

**II. The only document the Court may view under the modified categorical approach is the criminal information, which does not establish by a preponderance of the evidence that Hardman committed generic burglary.**

The Court can now use the modified categorical approach to figure out *which* alternative set of elements Hardman pled guilty to. This approach "permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction." *Id.* These so-called *Shepard* materials are documents to whose contents the defendant, in pleading guilty, "necessarily admitted." *Shepard v. United States*, 544 U.S. 13, 20–21 (2005). These include "the terms of the charging document," "the defendant's own admissions or accepted findings of fact confirming the factual basis for a valid plea," or "some comparable judicial record of this information." *Id.* at 25, 26. Impermissible, then, are police reports or complaint applications. *Id.* at 16.

The court may consider documents "explicitly incorporated" into *Shepard* documents, even if the collateral documents do not themselves pass *Shepard* muster, because the defendant would have necessarily adopted their factual allegations. *United States v. Simms*, 441 F.3d 313, 317 (4th Cir. 2006); *accord United States v. Amos*, 496 F. App'x 517, 524 (6th Cir. 2012) ("incorporated by reference"); *Parrilla v. Gonzales*, 414 F.3d 1038, 1044 (9th Cir. 2005) ("specifically incorporated"). For example, when the defendant pleads guilty to a complaint that makes no reference to a separate criminal information, the court may not consider the information even if the information is consistent with the complaint. *Thornton*, 766 F.3d at 878– 79. This is because the court cannot be sure that the information formed the basis of the defendant's conviction. *Id.* at 879 (rejecting the information for want of a "sufficient link" to the

6

complaint). In assessing whether the Government has satisfied its burden, the Court may draw reasonable inferences from "the *Shepard*-qualifying materials in order to identify the discrete statutory subdivision at issue." *United States v. Ossana*, 679 F.3d 733, 736 (8th Cir. 2012).

The parties have given the Court two documents to view: the state-court information, and the federal-court PSR.

> **A. The information does not reasonably permit the inference that Hardman burglarized a house or any other non-vehicular, enclosed space.**

The information from Hardman's second-degree burglary case, to which he pled guilty, charged that he,

> in violation of Section 569.170, RSMo, . . . acting alone or purposefully in concert with another, knowingly entered unlawfully in an inhabitable structure, located at 2615 Jackson Avenue, and owned by Daniel Salinas for the purpose of committing Stealing therein.

(Crim. Doc. 33-1 at 1) (boldface removed).

This information does not establish, by a preponderance of the evidence, that Hardman entered a "building" as opposed to an "inhabitable structure." It cites statutes, uses legal terms of art, and tracks the language of Mo. Rev. Stat. § 569.170.1, implying that its language should be given its precise legal meaning. So when the information alleges Hardman entered "an inhabitable structure," it impliedly means "inhabitable structure" as defined by the statutes, meaning vehicles and other movable structures. *See United States v. Alexander*, 809 F.3d 1029, 1032 (8th Cir. 2016) (finding that the defendant had violated Mo. Rev. Stat. § 565.060.1(2) in part because "[t]he language of the information track[ed] the language of § 565.060.1(2)"); *United States v. Bell*, 445 F.3d 1086, 1090–91 (8th Cir. 2006) (construing the Missouri second-degree burglary statutes and holding that the defendant was convicted under the "building" set of elements because the PSR recited that he had "enter[ed] a *building* at 2007 E. 19th Street" (emphasis added)).

Nothing in the information proves that the "inhabitable structure" on Jackson Avenue refers to a space that is designed for occupancy and intended for use in one place, as required for generic burglary. *See Silva*, 608 F.3d at 668–69. The Government seizes upon the information's reference to a street address, 2615 Jackson Avenue: "The reference to a physical street address . . . clearly demonstrates, on the face of the charging document alone, that Hardman was charged with unlawfully entering into a building or enclosed space . . . . Hardman was not charged with unlawfully entering into a ship, trailer, sleeping car, airplane, or other vehicle, none of which obviously, would have a street address on Jackson Avenue." Resp.'s Br. 9 (Doc. 5).

That inference is not as irresistible as the Government thinks. Sure, the information probably did not mean to suggest that Hardman burglarized an airplane parked at 2615 Jackson Avenue. But what about other vehicles? Mobile homes can have street addresses, so the information plausibly could be referring to a mobile home or other movable housing. Alternatively, the "inhabitable structure" in the indictment could mean an automobile, since there are few better ways to concisely convey an automobile's location than its nearest street address.

This problem arose in *Shepard* itself. The sentencing court concluded that Shepard's prior burglary convictions did not satisfy the ACCA because the convictions' complaints gave no more than the burglarized properties' addresses. *See Shepard*, 544 U.S. at 31–32 (O'Connor, J., dissenting) (reciting one of the complaints, which listed the place of offense as only "30 Harlem St."). The sentencing judge refused to consider police reports that expounded these complaints and made clear that the properties were buildings. *See id.* at 32 (reciting one of the police reports, which mentioned a cellar door and a pantry). The First Circuit reversed but the Supreme Court vindicated the sentencing judge's position, with all eight participating justices implicitly agreeing that the street addresses alone did not demonstrate that the defendant had burglarized
8

buildings. *Id.* at 26 (majority opinion); *id.* at 31 (O'Connor, J., dissenting) ("If these complaints were the only evidence of the factual basis of Shepard's guilty pleas, then I would agree with the majority that there was no way to know whether those convictions were for burglarizing a building.").

The Court asks these questions not because it wants to have a theoretical, academic discussion, but because the information simply gives the Court no basis to presume that the inhabitable structure was a building. Reaching the conclusion urged by the Government requires more than "reasonable inferences," *Ossana*, 679 F.3d at 736; it requires the sort of unfounded speculation rejected in *Shepard*. This is one of those cases where "the paucity of information in state court records . . . wholly thwart[s] analysis pursuant to the modified categorical approach." *Id.* at 736–37. What the Court can see is only that Hardman broke into "an inhabitable structure"—defined expansively under Missouri law to include vehicles—and that there is a street address associated somehow with that inhabitable structure. The Court cannot conclude on the information alone that Hardman was, more likely than not, convicted of breaking into a non-vehicular dwelling. *See Thornton*, 766 F.3d at 878.[3]

> **B. Because the probable cause statement in the PSR is not a *Shepard* document, the Court cannot look at it even though Hardman did not object to its inclusion at sentencing.**

The second document that the Government puts before the Court is Hardman's federal PSR, which expressly relies on the probable cause statement in Hardman's 2007 burglary case. That probable cause statement confirms that the place burglarized was a "home" which had been

---

[3] The Government cites a decision of the Fourth Circuit to support its claim that "2615 Jackson Avenue" ineluctably refers to a building. *United States v. Foster*, 662 F.3d 291 (2011). The complaints in that case listed not just the burglarized structures' addresses, but also their names: the "Sunrise-Sunset Restaurant" and the "Corner Market." *Id.* at 292. On that basis, the district court had fairly inferred that these structures were actually buildings. *Id.* at 295; *see also United States v. Carbajal-Diaz*, 508 F.3d 804, 811 (5th Cir. 2007) (finding that a defendant's Missouri conviction for first-degree burglary was for a crime of violence where the indictment described the burglarized structure as "206 West 34th Street, *Apartment 2E*, Kansas City, Jackson County, Missouri").

entered through a window in the laundry room. The PSR, if the Court can look at it, demonstrates that Hardman was convicted of the "building" portion of the second-degree burglary statute, which would thus conform to the elements of generic burglary.

However, the Court cannot consider the probable cause statement as summarized in the PSR. To start, the PSR here is not a *Shepard* document. *Shepard* documents are "confined to the records of the convicting court." *Shepard*, 544 U.S. at 23. Because the federal PSR here was not generated in the convicting Circuit Court of Jackson County, it is not approved by *Shepard*. *See id.*

Nor is the probable cause statement a *Shepard* document. It is not a charging document to which a defendant pleads guilty; it is merely part of a complaint. *See* Mo. Sup. Ct. R. 22.02–.03 (specifying the content of felony complaints, which must include probable cause statements). A pending complaint represents "a mere possibility that a criminal charge will be filed," *State v. Caffrey*, 438 S.W.2d 167, 171 (Mo. 1969); it is "the first step in the institution of a criminal charge." *Arnold v. State*, 484 S.W.2d 248, 250 (Mo. 1972); Mo. Sup. Ct. R. 22.01. The filing of a complaint entitles the accused to a preliminary hearing to determine whether he should be bound over for trial. *See* Mo. Sup. Ct. R. 22.09(a).

If an associate circuit judge finds that there is probable cause to believe the defendant committed a crime, *then* the prosecutor must file an information formally charging the accused. Mo. Sup. Ct. R. 23.03. Unlike a complaint, an information need not incorporate a probable cause statement. *See* Mo. Sup. Ct. R. 23.01. The defendant may plead guilty only to the information. Mo. Sup. Ct. R. 24.01. Therefore, the information, not the complaint or the probable cause statement, is the charging document.

As a charging document, the information passes *Shepard* muster. *See Shepard*, 544 U.S. at 20–21. But the probable cause statement, as part of the complaint, is not something the defendant pleads guilty to and necessarily admits the contents of. It therefore is not automatically a *Shepard* document. *See id.* And in this case, because Hardman's information does not explicitly incorporate the probable cause statement referenced in the PSR, the probable cause statement does not become a derivative *Shepard* document. *See Thornton*, 766 F.3d at 878–79; *Simms*, 441 F.3d at 317; *cf. United States v. Linngren*, 652 F.3d 868, 871–72 (8th Cir. 2011) (relying on a probable cause statement under *Shepard* because it was integrated into the charging document).[4]

The Government attempts to rehabilitate the probable cause statement's *Shepard* infirmity by seizing on Hardman's failure to object to its inclusion in the PSR. In the Government's view, a defendant that fails to object to a PSR is bound by any factual recitations it contains, regardless of where those facts originated.

In some cases, failing to object to the facts in the PSR "relieve[s] the government of its obligation to introduce at sentencing the documentary evidence *Taylor* or *Shepard* requires." *United States v. McCall*, 439 F.3d 967, 974 (8th Cir. 2006) (en banc), *abrogated in other part by Johnson*, 135 S. Ct. at 2563. However, this happens in only two situations. First, this waiver takes effect "where the PSR describe[s] prior offense without stating its documentary sources." *Id.* (citing *United States v. Balanga*, 109 F.3d 1299, 1304 & n.7 (8th Cir. 1997) (describing the factual predicates for the earlier convictions in the federal PSR without apparent attribution)); *United States v. Stymiest*, 581 F.3d 759, 768 (8th Cir. 2009) (same). Second, a waiver takes

---

[4] It is not enough that non-*Shepard* documents are *consistent* with *Shepard* documents; the Court may view only those documents whose facts Hardman *necessarily* adopted. *Shepard*, 544 U.S. at 20–21. The Supreme Court in *Shepard* specifically rejected an entreaty to expand the universe of *Shepard* documents to include any "uncontradicted," "internally consistent" parts of the record from the earlier conviction. *Id.* at 23 n.4. Therefore, the consistency between the information and the complaint is irrelevant.

effect "where the PSR describe[s] conduct derived from documents *Taylor* or *Shepard* permit." *McCall*, 439 F.3d at 974; *e.g. United States v. Sykes*, 809 F.3d 435, 437–39 (8th Cir. 2016) (relying on an unobjected-to PSR that was based on "certified court records"); *cf., e.g.*, *United States v. Williams*, 627 F.3d 324, 327 (8th Cir. 2010) (rejecting an unobjected-to PSR that was based on a *Shepard*-prohibited police report).

Although Hardman did not object to the PSR's use of the probable cause statement, the Government was not entitled to rely on it to argue for ACCA enhancement. First, the PSR did not describe the circumstances around the Jackson Avenue burglary in a summary fashion; it attributed its sources. *See McCall*, 439 F.3d at 974. Second, the PSR referenced conduct derived from the probable cause statement, which as previously explained is not allowed under *Shepard*. *See id.* Given the uncertainty as to whether Hardman actually admitted to the statements in the probable cause statement, the Government never could have relied on it, Hardman's failure to object notwithstanding. Therefore, the Court cannot consider the PSR's summary of the probable cause statement.

### III. Whether Hardman actually burglarized a house is irrelevant.

Finally, the Court must address the Government's general contention that the record "definitively and conclusively establish[es] that Hardman *committed* generic burglary." Resp.'s Sur-Response 3 (Doc. 8) (emphasis added). Did Hardman actually burglarize a home? Probably—but the question here is whether Hardman has a *conviction* for committing generic burglary. *See Taylor*, 495 U.S. at 600 ("Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling with certain categories, and not to the facts underlying the prior convictions."). This approach, for better or for worse, "forces the federal sentencing court to feign agnosticism about clearly knowable facts." *Shepard*, 544

12
Case 4:15-cv-00798-DGK   Document 10   Filed 03/07/16   Page 12 of 14

U.S. at 35 (O'Connor, J., dissenting). The record, so viewed, does not establish that Hardman was convicted of generic burglary under Missouri law.

**IV. Because Hardman is entitled to § 2255 relief, the Court must vacate his sentence.**

Because the *Shepard* materials do not demonstrate that Hardman's 2008 second-degree burglary conviction is for "burglary" or any other type of "violent felony," that conviction does not qualify as an ACCA predicate. *See Descamps*, 133 S. Ct. at 2283; 18 U.S.C. § 924(e). Without his burglary conviction, Hardman has not committed at least three qualifying ACCA felonies, which makes his "sentence . . . in excess of the maximum authorized by law." 28 U.S.C. § 2255(a). Therefore, the Court must grant the extraordinary relief offered by § 2255(b) and vacate Hardman's sentence. *See id.* § 2255(b) ("If the court finds that . . . the sentence imposed was not authorized by law . . . the court shall vacate and set the judgment aside and shall . . . resentence [the movant].").

**Conclusion**

In view of the foregoing, Hardman's Motion to Vacate, Set Aside, or Correct Judgment Pursuant to 28 U.S.C. § 2255 (Doc. 1) is GRANTED. The judgment and commitment in *United States v. Ronnie L. Hardman*, 11-CR-53-W-DGK (W.D. Mo. filed Mar. 2, 2011) (Crim. Doc. 23) is VACATED.

The Court ORDERS the U.S. Probation and Pretrial Services Office to prepare an updated presentence investigation report on Hardman. Hardman is granted a new sentencing hearing, to be set as soon as the presentence investigation report is completed. Until the sentencing hearing, Hardman's detention order (Crim. Doc. 11) remains in full force and effect.

**IT IS SO ORDERED.**

Date:  March 7, 2016                                    /s/ Greg Kays
                                                        GREG KAYS, CHIEF JUDGE
                                                        UNITED STATES DISTRICT COURT